223 F.2d 49
 48 A.L.R.2d 1285
 UNITED PROTECTIVE WORKERS OF AMERICA, LOCAL NO. 2, an
Independent, Unincorporated Voluntary Labor
Organization, and Joseph W. Orloski,
Plaintiffs-Appellants and
Plaintiffs-Appellees,
v.
FORD MOTOR COMPANY, Defendant-Appellee and Defendant-Appellant.
 Nos. 11145, 11146.
 United States Court of Appeals Seventh Circuit.
 May 20, 1955.
 
 William J. Flynn, Chicago, Ill., for United Protective Workers.
 George B. Christensen, Fred H. Daugherty, Chicago, Ill., for Ford Motor Co. Winston, Strawn, Black & Towner, Chicago, Ill., William T. Gossett, Dearborn, Mich., of counsel.
 Before MAJOR, LINDLEY and SWAIM, Circuit Judges.
 SWAIM, Circuit Judge.
 
 
 1
 These appeals are from a judgment in an action which was brought by the United Protective Workers of America, Local No. 2, and one of its members, Joseph Orloski, to obtain monetary and injunctive relief from the Ford Motor Company because of the alleged breach by Ford of its collective bargaining agreement with the Union by the compulsory retirement of Orloski at age 65.
 
 
 2
 On June 21, 1945, the Company signed a group annuity contract with The Equitable Life Assurance Society of the United States for the benefit of those of its employees who received a certain salary or over and who chose to participate in the plan. The contract provided for monthly payments to members of the plan on retirement. Retirement age was defined as 65 with optional earlier retirement under certain specified conditions. The Company distributed a pamphlet explaining the plan to its employees. Orloski did not receive a pamphlet at that time because his salary was not then large enough to allow him to participate in the plan. He testified that he never received or saw a copy of this explanatory pamphlet, even when his salary was raised and he did enter the plan. The evidence failed to show as a matter of law that Orloski had been this explanation of the annuity plan or knew that it provided for compulsory retirement at age 65.
 
 
 3
 On September 26, 1947, after a wage increase, Orloski elected to enter the plan and signed an 'acceptance and salary roll deduction authority.' This card authorized deductions from Orloski's salary and named his wife as beneficiary of death benefits. It did not explain the plan in any way nor mention retirement. On April 25, 1949, Orloski was retired against his will and was thereafter paid $20.00 per month under the annuity plan.
 
 
 4
 In his suit for reinstatement and back pay Orloski claimed that the collective bargaining agreement between his Union and the Company prevented his discharge except for cause and that the Group Annuity Plan entered into by Ford did not furnish such cause. The District Court dismissed the complaint for failure to state a cause of action. On appeal we reversed, and remanded the case for answer by the defendant and trial, holding, among other things, that under the collective bargaining contract then in effect the Company did not have the right to retire plaintiff without his consent. United Protective Workers of America v. Ford Motor Co., 7 Cir., 194 F.2d 997. On remand the District Court found for Orloski, assessed his damages in the amount of $4,977.36, and denied recovery to the Union. All three parties have appealed. Orloski contests the District Court's measure of damages, the Union claims it should recover damages, and the Ford Motor Company disclaims liability to either party.
 
 
 5
 The Company argues on several grounds that Orloski was properly retired. First, it claims that he was retired under an established retirement plan in which he was voluntarily participating. However, the only positive evidence in the record indicates that Orloski did not know that the annuity contract between the insurance company and Ford provided for retirement at age 65 and that he did not consent to compulsory retirement. In the absence of knowledge of or consent to the Company's alleged policy of compulsory retirement, there is no basis for holding that Orloski waived his right, under the collective bargaining agreement, to be discharged only for cause. Nichols v. National Tube Co., D.C., 122 F.Supp. 726, 732.
 
 
 6
 On the previous appeal we held that Orloski's failure to first follow the grievance procedure of the collective bargaining agreement did not bar his recovery in court, because the Company's attitude in the suit, as evidenced by its briefs, made it obvious that pursuit of the grievance procedure would have availed Orloski nothing. The Company now claims that certain letters introduced into evidence on the remand show that we were wrong and that the grievance procedure on behalf of Orloski would not have been a useless thing. After carefully examining these documents we find they reflect the same attitude conveyed by the briefs when the case was first before us. In a letter from an associate counsel for the Ford Motor Company to the plaintiff's attorney, which is in the record now before us, the following statement is made.
 
 
 7
 'Whether or not we are compelled to do so legally, we have in fact bargained with you concerning the instant case. No amount of negotiation will reduce Mr. Orloski's age nor eradicate his past participation in the current Plan.'
 
 
 8
 The Company was willing to talk about the situation but made it clear that it was not going to change its position. We hold, as we did before, that, faced with this attitude by Ford, Orloski was not required to first go through the steps of the grievance procedure before seeking the legal and equitable relief to which he is entitled.
 
 
 9
 The Company claims that there is no substantial evidence in the record to support the District Court's finding that Orloski tried to mitigate his damages by seeking other suitable employment with 'due diligence,' and that, therefore, Orloski should recover no damages. In its brief the Company cites two cases to substantiate this argument: Buster v. Chicago, M., St. P. & P.R. Co., 7 Cir., 195 F.2d 73; and Doherty v. Schipper & Block, 250 Ill. 128, 95 N.E. 74, 34 L.R.A.,N.S., 557. Neither of these cases mentions the question with which we are here concerned.
 
 
 10
 The correct rule is that where the discharged employee has not used 'reasonable diligence' to find other suitable work, the judgment will be reduced by the amount he would have been able to earn if he had used 'reasonable diligence.' Keel v. Illinois Terminal R. Co., 346 Ill.App. 169, 173, 104 N.E.2d 659; Taylor v. Tulsa Tribune Co., 10 Cir., 136 F.2d 981, 983.
 
 
 11
 The exercise of due or reasonable diligence is a question of fact and was determined by the court in this case: 'I therefore hold, and shall enter as Findings of Fact, that Orloski * * * did make reasonable efforts to mitigate his damages by attempting to obtain gainful employment, in the interim.' (Opinion of the trial judge announced January 22, 1954, record page 613.) The record shows that Orloski knew efforts were being made by the Union to have him reinstated, and expected to be called back to work. Despite this, he made three attempts to obtain work. This was sufficient evidence to sustain the finding of the trial judge.
 
 
 12
 In setting the amount of damages, the District Court awarded Orloski the wages he would have made from April 25, 1949, the date of his retirement, until December 1, 1950. On March 1, 1950, a new retirement and annuity plan, to which Ford and the Union had both agreed, went into effect. The parties agree that under its provisions Orloski could have been retired on December 1, 1950. The plan also provided that with the permission of a special company board an employee could be retained until age 68.
 
 
 13
 If Orloski had not been retired on April 25, 1949, he would have come under this new retirement plan. The trial judge had to determine when, under the new plan, Orloski would have been retired. He determined, reasonably we think, that Orloski would have been retired on the regular retirement date rather than the exception. Although there is no specific evidence on either side of the question, we feel that the trial judge's choice was the more reasonable of the two and was supported by the record as a whole.
 
 
 14
 The general rule which the trial judge followed is stated in Williston, On Contracts (1937 ed.) Sec. 1359, at page 3815: 'It is not uncommon for contracts of employment to contain a provision for termination upon a certain period of notice. In such a case, the damages are limited to the nearest date at which the employer could rightfully exercise his privilege.'
 
 
 15
 The trial judge reduced the damages by the amount of social security and annuity payments received by Orloski between April 25, 1949 and December 1, 1950. Orloski claims that this was error. The specific question raised by this contention has never the been decided, but analogies to several lines of cases are possible. Orloski relies on cases which primarily deal with the power of the National Labor Relations Board to enter orders against employers which require payment to wrongfully discharged employees of the amount of wages or earnings which they would have received if they had not been discharged, less the net earnings which they received during the period. N.L.R.B. v. Brashear Freight Lines, 8 Cir., 127 F.2d 198, was initiated by a petition to have the defendant adjudged in contempt for refusing to obey the court's order enforcing the Board's order to pay back wages. The opinion, however, does contain this dicta at page 199:
 
 
 16
 'Aside from the interpretation to be given the words used, our order could not, we think, be interpreted as intending to give the employer, found to be a wrongdoer, the benefit of gifts or other collateral benefits received by the former employee during his period of unemployment. It is enough that it is permitted to deduct what he earned as wages.'
 
 
 17
 The Court there properly held that the words 'earnings for services rendered are to be deducted' (127 F.2d at page 199) did not include the value of groceries received from a Union while the discharged worker was unemployed.
 
 
 18
 In Marshall Field & Co. v. N.L.R.B., 318 U.S. 253, 63 S.Ct. 849, 87 L.Ed. 1165, affirming N.L.R.B. v. Marshall Field & Co., 7 Cir., 129 F.2d 169, 144 A.L.R. 394, the Supreme Court, held that the words 'net earnings,' as used by the Board in describing what should be deducted from the amount of wages lost did not include state unemployment compensation payments. The Court expressly refrained from deciding whether or not the Board had the power to deduct only 'wages,' because that question had not been raised before the Board. See 29 U.S.C.A. § 160(e). But later in N.L.R.B. v. Gullett Gin Co., 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337, the Court held that it was within the discretion of the Board to award back pay without deducting unemployment compensation payments received during the period for which the back pay was due. However, there was no suggestion that the Board could not deduct such compensation payments in any case in which it thought that would best effectuate the purposes of the Act.
 
 
 19
 The cases speak only of the National Labor Relations Board's power to award back pay under the Act without deductions of any amounts other than for wages or earnings received during the period. They are not decisive as to the propriety of deductions which should be made in determining the amount of damages in a common law action for damages for the breach of an employment contract. 'The fundamental basis for an award of damages for a breach of contract is just compensation for those losses which necessarily flow from the breach. Blair v. United States, 8 Cir., 150 F.2d 676.' Schlottman v. Pressey, 10 Cir., 195 F.2d 343, 345. 'Compensation for breach of contract should place an injured party in the position such party would have been in had the contract been fully performed.' Baer Bros. Land & Cattle Co. v. Palmer, 10 Cir., 158 F.2d 278, 280.
 
 
 20
 The status of social security and annuity payments is not material to the decision here. The question for us to decide concerns only the proper damages for breach of contract. If Orloski had not been improperly retired, he would not have received the payments in question. The District Court's judgment awarded him all the wages he would have received if the contract had not been breached, and if the social security and annuity payments are not deducted, Orloski will have received more than he would have if the contract had not been breached. '* * * (A) party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed.' Blair v. United States, 8 Cir., 150 F.2d 676, 678.
 
 
 21
 The well established rule that a tortfeasor cannot escape any of his liability because the injured party was compensated by a third party might appear to be analogous to the situation here. In United Gas Corp. v. Guillory, 5 Cir., 207 F.2d 308, 309, the court stated the rule followed by the great majority of states: 'The principle is well settled in Louisiana that an injured employee 'who sustains a loss as the result of the negligence of another may recover the full amount of his loss from the tortfeasor, even though the loss is partially or wholly made good by an insurer." Illinois also follows this rule in tort cases. Davidson v. Loomis, 282 Ill.App. 515, 519; Illinois Central R.R. Co. v. Prickett, 210 Ill. 140, 144, 71 N.E. 435; Pittsburgh C. & St. L. Railway Co. v. Thompson, 56 Ill. 138, 143. See 44 Ill.L.Rev. 835.
 
 
 22
 In Overland Const. Co. v. Sydnor, 6 Cir., 70 F.2d 338, it was held that a tortfeasor could not deduct payments made to the plaintiff by the Ohio Industrial Commission for medical and hospital bills even though the tortfeasor was plaintiff's employer and had contributed to the Commission in plaintiff's behalf. In Hetrick v. Reading Co., D.C.N.J., 39 F.Supp. 22, it was held that annuity payments paid to an injured plaintiff could not be deducted from damages for which the tortfeasor was liable.
 
 
 23
 This rule of tort law has a flavor of punitive damages as is shown by the following case which is typical. 'It is a well-settled principle of law that a tortfeasor cannot escape the consequences of his wrongdoing merely because his victim was fortunate enough to receive reparation from a collateral source.' United States v. Shipowners & Merchants Tugboat Co., D.C., N.D.Cal.S.D., 103 F.Supp. 152, 153. In the insurance cases there is, in addition, the feeling that since the plaintiff paid for the insurance, he, and not the defendant, should get the benefit of it.
 
 
 24
 We have been unable to find a single case in which this rule has been carried over to contract damages. In the absence of any binding precedent to the contrary we prefer to follow here the ordinary contract measure of damages rather than the rule in tort cases.
 
 
 25
 A tort always involves fault or negligence (with the exception of the few areas in which there is strict liability); otherwise the harm is not compensable. The dispute before us arose because the parties interpreted their contract differently, and the principles of law involved had not been clearly settled previously. There was no bad faith or misconduct on either side. Although Ford was subsequently found to have breached and contract, it is not a wrongdoer in the tort sense. There is no justification for an award with even the flavor of punitive damages. The only appropriate measure of damages is compensation.
 
 
 26
 The record supports the trial court's finding that the Company was not so unreasonable or so vexatious as to entitle Orloski to the payment of interest on the amount of his damages prior to the entry of the judgment.
 
 
 27
 The appellant Union contends that it was also entitled to judgment for $5,000.00, but, as the trial court found, loss to the Union was neither alleged in the complaint nor proved at the trial.
 
 
 28
 Affirmed.