[The State ex rel.] Stacy, Appellant and Cross-Appellee,
*v.* Batavia Local School District Board of Education
et al., Appellees and Cross-Appellants.

[Cite as *State ex rel. Stacy v. Batavia Local School Dist.
Bd. of Edn.,* 105 Ohio St.3d 476, 2005-Ohio-2974.]

(No. 2004–0701—Submitted March 1, 2005—Decided June 29, 2005.)

---

**Per Curiam.**

{¶ 1} This is an appeal and cross-appeal from a judgment awarding back pay and benefits in a mandamus action. We affirm in part and reverse in part.

{¶ 2} From March 1985 through August 21, 1998, appellee and cross-appellant Batavia Local School District Board of Education employed appellant and cross-appellee, Dorsie Stacy, as a mechanic, under a continuing contract. During this period, Stacy was primarily responsible for performing repairs and maintenance on vehicles and equipment owned by the board. Stacy routinely repaired and replaced brakes, exhaust systems, transmissions, and engines on school buses. Although Stacy also occasionally cleaned, fueled, and washed the buses during this period, the bus drivers performed most of these duties. While employed as a mechanic by the board, Stacy generally worked indoors from 7:00 a.m. to 3:30 p.m.

{¶ 3} In June 1998, the board contracted with Laidlaw Transit, Inc. ("Laidlaw") for Laidlaw to provide transportation services in the school district for five years. On July 20, 1998, the board abolished the bus-driver and mechanic positions and laid off the employees in those positions, including Stacy, effective August 21, 1998. Stacy and the other employees received written notification of the layoffs, which specified that "[r]einstatement to employment shall be made from the list of laid off employees in order of seniority."

{¶ 4} Under its contract with the board, Laidlaw agreed to offer employment to the laid-off employees and to provide a three-percent increase in pay and comparable benefits to these employees. On June 24, 1998, Laidlaw offered Stacy employment as a bus mechanic at his 1997–1998 salary plus a three-percent increase. Stacy would also receive comparable health and dental insurance and continued participation in the School Employees Retirement System ("SERS"). Stacy, however, was already earning his 1998–1999 salary of $31,152.94 under his continuing contract with the board, which Stacy claimed was three percent more than what Laidlaw was offering. Stacy would have been performing essentially the same work he had been providing when employed by the board, with some additional computer data entry. Stacy rejected the offer.

{¶ 5} After refusing the job offer from Laidlaw, Stacy tendered his written resignation from employment with the board effective August 21, 1998, and requested to be paid for all unused vacation and personal days. Although Stacy accrued sick leave at the rate of 15 days a year during his over 13 years of employment with the board, he had a balance of only 29.75 days of sick leave as of August 1998. Stacy also accrued 3 days of personal leave per year, but as of August 1998, he had a balance of only 3 days.

{¶ 6} Stacy then applied for and received retirement benefits. He received $5,754.20 from SERS for the 1998–1999 school year and $6,984 from SERS for the 1999–2000 school year. In 2001, Stacy received $7,215.76 from SERS. Stacy also received Social Security benefits beginning in 1999, including $9,120 in 2001 and $9,348 in 2002.

{¶ 7} If he had continued to be employed by the board after August 21, 1998, Stacy claims, he would have earned the following salaries under the applicable collective-bargaining agreements: 1998–1999 school year—$31,152.94; 1999–2000 school year—$34,206.72; 2000–2001 school year—$34,654.40; 2001–2002 school year—$35,214.40; and for the 2002–2003 school year until his reinstatement on December 23, 2002—$16,523.68. These salary amounts include step increases, which the school district treasurer conceded Stacy would have received had he continued in the board's employ. Stacy earned $4,792.76 working for the board in the 1998–1999 school year until his retirement in August 1998.

{¶ 8} The collective-bargaining agreements during the period of Stacy's retirement provided for 15 days of sick leave per year, accrued at the rate of 1.25 days per month. These agreements also provided an attendance incentive of up to $300 a year for an employee who has taken no days off for sick leave or personal leave.

{¶ 9} In August 1998, Ohio Association of Public School Employees/AFSCME, Local 4, AFL–CIO, the representative of the bargaining unit that included school bus drivers and Stacy as the sole mechanic, requested that the board honor the

statutory employment contracts and continue to employ the bus drivers for school year 1998–1999 and thereafter. Stacy had already tendered his resignation to the board, and the board had accepted it.

{¶ 10} On August 24, 1998, the union and the school bus drivers filed an action for a writ of mandamus to compel the board, its superintendent, its treasurer, and its president to reinstate them and award back pay and lost benefits. Stacy, who had retired, was not a party to this action. After the court of appeals denied the writ, this court, on June 21, 2000, reversed the judgment, granted the writ, and remanded the cause to the court of appeals for a determination of back pay and benefits. *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4, AFL–CIO v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 198–199, 729 N.E.2d 743 (*"OAPSE"*). The court held that the board was not authorized to lay off the bus drivers, that the outsourcing of their jobs to Laidlaw was invalid, and that the bus drivers were entitled to reinstatement. Id.

{¶ 11} Shortly after the court's judgment in *OAPSE*, by letter dated July 17, 2000, Stacy requested that the board reinstate him as a school bus mechanic. On July 18, 2000, Stacy formally applied for a mechanic position that had been advertised by the board. The board did not reinstate him or hire him for the mechanic position. From the date of his retirement in August 1998 until he applied for the mechanic position in July 2000, Stacy did not apply for any position with any other employer. Pursuant to *OAPSE*, the board reinstated all of the laid-off bus drivers, who, unlike Stacy, had not retired.

{¶ 12} On October 10, 2000, Stacy filed a complaint in the Court of Appeals for Clermont County for a writ of mandamus to compel cross-appellants, hereafter collectively referred to as "board," to reinstate him to his position as mechanic, honor his statutory employment contract, and award him both back pay and lost benefits. Stacy claimed that the judgment in *OAPSE* collaterally estopped the board from contesting Stacy's right to reinstatement, back pay, and lost benefits.

{¶ 13} On March 11, 2002, the court of appeals denied the writ. The court of appeals concluded that Stacy had waived his right to reinstatement and back pay because he had voluntarily retired.

{¶ 14} On December 4, 2002, we reversed the judgment of the court of appeals. *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216 (*"Stacy I"*). We held that although collateral estoppel did not preclude the board from contesting Stacy's entitlement to the writ, the board's actions in abolishing his mechanic position, laying him off, and contracting out his job to Laidlaw were prohibited by R.C. 3319.081. Id., ¶ 20. We further held that "Stacy's August 1998 retirement was involuntary because it was precipitated by the board's illegal actions." Id., ¶ 30. We remanded the cause for issuance of a writ of mandamus to compel the board to reinstate Stacy

to his former position as a mechanic and for the court of appeals to resolve Stacy's claim for back pay and lost benefits. Id., ¶ 31–32.

{¶ 15} Pursuant to our order, the board notified Stacy to report for work on December 23, 2002. On that date, Stacy reported for work and was advised by a board employee that he could not work his old hours because the board had hired a mechanic for that time and that his new hours would be 5:30 p.m. to 2:00 a.m. He was further advised that his new duties could consist of fueling, sweeping, mopping, and washing the buses and notifying other employees of any defects he discovered when driving the buses to get gas. He was not permitted to perform his old duties of maintaining and repairing the buses. According to board employees, Stacy was not allowed to perform his previous maintenance duties on the buses because of concerns about the poor condition in which he had left the buses when he retired. The board acknowledged, however, that there was nothing in Stacy's personnel file indicating that Stacy had poorly performed his maintenance duties while employed by the board.

{¶ 16} On December 27, 2002, Stacy injured himself while fueling buses. Stacy returned to work on January 6, 2003, and worked until January 9, 2003, when he alleged that the back pain from his injury forced him to leave work.

{¶ 17} On remand under our order, the court of appeals granted Stacy leave to file an amended/supplemental complaint. In his amended/supplemental complaint, Stacy requested a writ of mandamus ordering the board to (1) reinstate him to his former position as a mechanic, (2) award him lost back pay and benefits, (3) prohibit the board from retaliating against, discriminating against, or terminating him for improper reasons, (4) award him costs and attorney fees because the board's refusal to reinstate him and pay him his back pay was frivolous conduct under R.C. 2323.51, and (5) award him compensatory and punitive damages against the board in an amount in excess of $25,000. The request for damages was premised upon the board's alleged actions after this court's decision in *Stacy I*.

{¶ 18} The parties submitted briefs on Stacy's claims for lost pay and benefits. Stacy requested $134,221.18 in back pay, $1,200 in lost attendance incentive, prejudgment interest on both the back pay and the lost attendance incentive, and a credit of 82.5 hours of sick leave. In calculating his request for back pay, Stacy offset the amount he would have earned in the 1998–1999 school year with the amount he received for his work for the board during that year before his layoff and the money he received that year from SERS. And while he offset his SERS pension for school year 1999–2000, Stacy did not offset his SERS payments from his calculations for back pay due for the school years thereafter and did not offset his Social Security payments from his requested back pay for any of the school years.

{¶ 19} In January 2004, the board moved for summary judgment on Stacy's claim for compensatory and punitive damages. Stacy had previously withdrawn his claim for punitive damages against the board but not against the other cross-appellants. In February 2004, Stacy filed a memorandum in opposition to the board's summary-judgment motion.

{¶ 20} In April 2004, the court of appeals ordered the board to pay Stacy $25,888.18 in back pay and lost benefits pursuant to this court's remand in *Stacy I*. The court of appeals further ordered Stacy and the board to make appropriate contributions to SERS based upon the claimed total back-pay amount of $134,221.18, and ordered the board "to immediately reinstate Stacy to a mechanic's position which encompasses work hours and work duties similar to those hours and duties as prior to his retirement." The court of appeals also dismissed Stacy's claim for compensatory and punitive damages.

{¶ 21} In determining back pay, the court of appeals concluded that Stacy would have earned the $134,221.18 Stacy had requested for the period between his retirement in August 1998 and his reinstatement in December 2002. The court of appeals included in this back-pay amount the step increases Stacy requested but held that the back-pay award should not be offset by the SERS and Social Security benefits received by Stacy during the period of his layoff. The court of appeals concluded, however, based on newspaper advertisements for similar mechanic jobs published during Stacy's layoff, that Stacy could have found an equivalent mechanic or bus mechanic position paying $25,000 per year. The court held that by not seeking this alternate employment, Stacy had failed to mitigate his damages and that his back-pay award should be reduced by $108,333 in mitigation income, leaving a back-pay balance due of $25,888.18. It denied Stacy's request for prejudgment interest on the back-pay award.

{¶ 22} The court of appeals further determined that Stacy was not entitled to sick-leave credit and attendance-incentive money for the period of his layoff and that he was not entitled to an award of costs or attorney fees.

{¶ 23} This cause is now before the court upon Stacy's appeal and the cross-appeal of the board.

## Back Pay: Purpose of Award

{¶ 24} "It is axiomatic that '[a] wrongfully excluded public employee may obtain back pay and related benefits in a mandamus action following reinstatement or, in some cases, may obtain reinstatement and back pay and related benefits in the same mandamus action.'" *Stacy I*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, at ¶ 19, quoting *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 558, 565, 757 N.E.2d 339.

{¶ 25} This appeal and cross-appeal primarily concern Stacy's claim for back pay and related benefits resulting from the board's breach under R.C. 3319.081 of his continuing-contract status as a mechanic employed by the board. *Stacy I*, id. at ¶ 20 ("the board's actions [in abolishing the positions of school bus driver and mechanic, laying off public employees in those positions, and contracting out those jobs to a private entity] were invalid because they violated R.C. 3319.081, and Stacy—assuming that he did not waive his rights—was not properly terminated from his continuing-contract status as a mechanic employed by the board").

{¶ 26} The purpose of a back-pay award is to make the wrongfully terminated employee whole and to place that employee in the position the employee would have been in absent a violation of the employment contract. *In re Lilly* (2002), 173 Vt. 591, 593, 795 A.2d 1163; *United Protective Workers of Am., Local No. 2 v. Ford Motor Co.* (C.A.7, 1955), 223 F.2d 49, 53. This purpose is consistent with the general precept in breach-of-contract actions: "Money damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated." *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 439, 6 OBR 480, 453 N.E.2d 683; *Stratton v. Kent State Univ.*, Franklin App. No. 02AP–887, 2003-Ohio-1272, 2003 WL 1227570, ¶ 44 ("In giving an award of money damages in a breach of contract action, the intent is to place the injured party in the same position it would have been in had the contract not been breached").

{¶ 27} With this purpose providing the analytical framework, the parties' contentions concerning various aspects of the back-pay award are next considered.

### Back Pay: Step Increases

{¶ 28} "A reinstated public employee may maintain an action in mandamus to recover compensation due for a period of wrongful exclusion from employment, 'provided the amount recoverable is established with certainty.'" *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.* (1988), 39 Ohio St.3d 36, 37, 528 N.E.2d 1250, quoting *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. The term "with certainty" generally refers to "whether a particular amount has been precisely determined as to its value in dollars and cents" and at times "also refer[s] to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays." *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 120, 9 OBR 342, 459 N.E.2d 520.

{¶ 29} The board asserts that Stacy did not establish his entitlement to step increases in salary during the period of his wrongful exclusion from employment with the board. The board relies on *Hamlin*, id. at 122, 9 OBR 342, 459 N.E.2d 520, in which the court rejected claims for salary increases granted to other

board employees during the period of wrongful exclusion from employment because there was "no evidence in the record to show what Hamlin would have received by way of a pay raise, if any" and "[a] willingness to accept the minimum raise given others is not sufficient to satisfy the 'with certainty' standard."

{¶ 30} The board's assertion is meritless. Unlike the public employee in *Hamlin*, Stacy established by affidavit and deposition testimony—including the testimony of the school district treasurer—that if Stacy had not been wrongfully laid off by the board, he would have received the step increases that took effect automatically. Stacy thus satisfied his burden of proving his entitlement to these step increases with the requisite certainty. See, e.g., *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 366, 21 O.O.3d 228, 423 N.E.2d 1099 ("relator proved by testimony, by an exhibit, and by stipulation that he would have received a salary award which included the salary increases"); *State ex rel. Woods v. Clermont Cty. Bd. of Mental Retardation* (June 30, 1986), Clermont App. No. CA83–10–084, 1986 WL 7395, *5 (in which the parties stipulated that "across the board salary increments were awarded to all employees of Clermont County").

{¶ 31} Therefore, the court of appeals did not err in determining that Stacy was entitled to the step increases in salary as part of his back pay.

## Offset for SERS Benefits

{¶ 32} The board next asserts that the court of appeals erred in failing to set off any back-pay award by the amount of retirement benefits received by Stacy from SERS during the period he was wrongfully excluded from employment with the board. The court of appeals determined that no offset for these benefits was warranted because if the board were permitted to reduce the amount of back pay owed to Stacy by the amount of these retirement benefits, the board would receive a "windfall." For the following reasons, the court of appeals erred in so holding.

{¶ 33} First, as noted previously, the purpose of a back-pay award in a case involving a wrongfully excluded public employee is to put the employee in the same position the employee would have been in had the employer honored the contract. In *United Protective Workers*, 223 F.2d at 53–54, the United States Court of Appeals for the Seventh Circuit held in an action by a union and employee against an employer for damages for breach of a collective-bargaining agreement resulting in wrongful compulsory retirement that the back pay had been properly reduced by amounts of retirement payments received by the employee.

{¶ 34} In so holding, the Seventh Circuit held that if these retirement benefits had not been deducted from the back-pay award, the improperly retired employ-

ee would have received more than he would have if the employment contract had not been breached:

{¶ 35} "The status of [retirement] payments is not material to the decision here. The question for us to decide concerns only the proper damages for breach of contract. If Orloski had not been improperly retired, he would not have received the payments in question. The District Court's judgment awarded him all the wages he would have received if the contract had not been breached, and if the [retirement] payments are not deducted, Orloski will have received more than he would have if the contract had not been breached." Id. at 53. Therefore, Stacy, who—like the employee in *United Protective Workers*—involuntarily retired, was required to offset his SERS payments from his back-pay claim.

{¶ 36} Second, this conclusion is consistent with the holdings of Ohio courts, including this one. Cf. *Lynch v. Chupka* (Apr. 29, 1980), Franklin App. No. 79AP–803, 1980 WL 353427, *2–3 (public employee wrongfully denied reinstatement to position entitled to back pay offset by a disability pension and unemployment compensation); cf., also, *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 7, 22 O.O.3d 98, 427 N.E.2d 515 (back pay due public employee to compensate for wrongful exclusion from employment is reduced by amount received in unemployment compensation benefits because "the state cannot be required to pay twice"); *Bertolini v. Whitehall City School Dist. Bd. of Edn.*, Franklin App. No. 02AP–839, 2003-Ohio-2578, 2003 WL 21152516, ¶ 48–51 (back-pay award reduced by amount of disability payment received from School Teachers Retirement System).

{¶ 37} Third, this result comports with the holdings of other courts. See, e.g., *United Protective Workers*, 223 F.2d at 53 (back-pay award reduced by retirement benefit payments); *Jacobs v. New Jersey State Highway Auth.* (1969), 54 N.J. 393, 406, 255 A.2d 266 ("Out of the sum of back wages recovered by each man he is obliged to return to [state-public-employee retirement system] the pension payments received"); see, generally, Annotation, Right of Employer, Liable for Wrongful Discharge or Retirement, to Reduce or Mitigate Damages by Amount of Social Security or Retirement Benefits Received by Employee (1956), 48 A.L.R.2d 1293, 1293–1295, citing *United Protective Workers*, 223 F.2d 49; cf. *Corl v. Huron Castings, Inc.* (1996), 450 Mich. 620, 544 N.W.2d 278, 279 (back-pay award in wrongful-discharge action based on breach of employment contract reduced by unemployment-compensation benefits); *Dehnart v. Waukesha Brewing Co.* (1963), 21 Wis.2d 583, 595–596, 124 N.W.2d 664 (offset of unemployment-compensation benefits from back-pay award).

{¶ 38} Fourth, the collateral-source rule is not applicable to cases involving the breach of an employment contract. Stacy cites *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235, in support of his argument that based

on the collateral-source rule, retirement benefits should not be deducted from his back-pay award. But the *Pryor* holding is expressly limited to *tort* actions: "The collateral source rule is an exception to the general rule of compensatory damages *in a tort action,* and evidence of compensation from collateral sources is not admissible to diminish the damages for which a *tort-feasor* must pay for his negligent act." (Emphasis added.) Id., paragraph two of the syllabus. See, also, *Hollingsworth v. Levy* (Jan. 17, 1996), Hamilton App. Nos. C–950319 and A–9401166, 1996 WL 13849, *1 ("in Ohio, the collateral source rule is limited to actions sounding in tort and does not apply to contract actions"). "Several jurisdictions have considered whether the common-law collateral source rule should apply in breach of contract actions. With little exception, the majority of these courts has concluded that the rule should not apply outside the realm of tort actions." See *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.* (Iowa 1998), 579 N.W.2d 823, 830, and cases cited therein.

{¶ 39} Fifth, the court of appeals cited no authority for its holding that these retirement payments should not be deducted from Stacy's back-pay award. Instead, the court of appeals simply noted that offsetting these payments would confer a windfall on the board. This rationale, however, supports the common-law collateral-source rule in tort actions, which is intended to have both a punitive and deterrent effect on the tortfeasor. See Saine, Preserving the Collateral Source Rule: Modern Theories of Tort Law and a Proposal for Practical Application (1997), 47 Case W.Res.L.Rev. 1075. These principles are inapplicable in breach-of-contract actions. See *Midland Mut. Life Ins. Co.,* 579 N.W.2d at 830, quoting 22 American Jurisprudence 2d (1988), Damages, Section 568 ("The principle behind the collateral source rule is less compelling in contract actions because of the inapplicability of the deterrence factor in such cases and the countervailing principle that 'no one should profit more from the breach of an obligation than from its full performance'"); see, also, *United Protective Workers,* 223 F.2d at 54 ("rule of tort law has a flavor of punitive damages," but court is "unable to find a single case in which this rule has been carried over to contract damages").

{¶ 40} Sixth, Stacy cites cases that are likewise inapposite because they primarily involved noncontract claims in which deterrence or punitive purposes were evident. See, e.g., *Equal Emp. Opportunity Comm. v. O'Grady* (C.A.7, 1988), 857 F.2d 383, 389 (pension benefits not offset from award of back pay in age-discrimination case); *Dominguez v. Tom James Co.* (C.A.11, 1997), 113 F.3d 1188, 1191 (unemployment-compensation benefits not deducted from back-pay award in age discrimination and Title VII discrimination cases); *Ohio Civil Rights Comm. v. David Richard Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 95, 630 N.E.2d 669 ("allowing the discriminating employer to deduct unemployment benefits from a back pay award would benefit the employer by reducing the

deterrence against discriminatory conduct while conferring no gain upon the victim"). There is no similar suggestion that deterrence concerning the board's failure to accord continuing-contract status to Stacy is a legitimate purpose in fashioning a back-pay award in a wrongful-discharge case that involves neither discrimination nor tortious conduct. In fact, the court of appeals acknowledged that the cases cited by Stacy in his argument concerning retirement benefits had "little application here" because "[t]his case involves a collective bargaining agreement, not discrimination."

{¶ 41} Finally, it must be emphasized that because the court of appeals ordered the parties to make contributions to SERS for the period of his wrongful exclusion from employment with the board, Stacy will be credited with these years under SERS for purposes of retirement.

{¶ 42} Based on the foregoing, the court of appeals erred in failing to offset Stacy's back-pay award by the amounts he received in SERS payments during the period he was wrongfully excluded from employment by the board. A contrary holding would place Stacy in a better position than if the board had not breached his continuing contract.

### Offset for Social Security Retirement Benefits

{¶ 43} The board further claims that the court of appeals likewise erred in refusing to offset any back-pay award by the amount of Social Security retirement benefits received by Stacy during the period of his wrongful exclusion. The board's claim lacks merit.

{¶ 44} As the court of appeals concluded, and unlike the SERS benefits, "the Social Security benefits received by Stacy were not related to work performed for the board in any way." That is, because Stacy's receipt of these benefits was not based on contributions to Social Security during his public employment with the board and was not contingent upon whether he was employed by the board, these benefits should not be considered as payments that place Stacy in a better position than if the board had not laid him off. In fact, receipt of the Social Security payments is not inconsistent with the employee's continued public employment with the board. In contrast, SERS payments would have been inconsistent with Stacy's continued employment with the board.

{¶ 45} Therefore, the court of appeals did not err in refusing to offset Stacy's Social Security payments from any back-pay award.

### Back Pay: Duty to Mitigate

{¶ 46} "A public employee * * * who is wrongfully excluded from his position and sues to recover compensation for the period of exclusion, is subject to have his claim reduced by the amount he earned or, in the exercise of due diligence,

could have earned in appropriate employment during the period of exclusion." *State ex rel. Martin v. Columbus, Dept. of Health* (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123, paragraph two of the syllabus. This principle of mitigation of damages is "an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge." Id. at paragraph three of the syllabus; see, also, *Marshall v. Columbus* (1980), 61 Ohio St.2d 353, 355, 15 O.O.3d 436, 402 N.E.2d 509.

{¶ 47} The employee's due diligence in mitigating damages must be considered in light of employment opportunities based on the employee's education and experience. *State ex rel. Martin v. Columbus*, 58 Ohio St.2d at 266–267, 12 O.O.3d 268, 389 N.E.2d 1123. Nevertheless, the wrongfully discharged employee must accept similar employment in the same vicinity to mitigate damages:

{¶ 48} " 'Being subject to the universal rule that a person injured by the act of another is bound to use ordinary diligence to make the damage as light as may be, the discharged employee must use ordinary care to obtain employment. He may not be required to seek elsewhere, or to engage in a different industry. *But he is bound to use ordinary effort to obtain similar employment in the same vicinity; at least if such employment is offered he is bound to take advantage of it.*' " (Emphasis added.) Id. at 264–265, 12 O.O.3d 268, 389 N.E.2d 1123, quoting *James v. Allen Cty.* (1886), 44 Ohio St. 226, 233–234, 6 N.E. 246; see, generally, Danne, Nature of Alternative Employment Which Employee Must Accept to Minimize Damages for Wrongful Discharge (1972), 44 A.L.R.3d 629, 640, Section 3 ("the general rule [is] that an individual who has been discharged in breach of his contract for a definite term of employment is obliged to mitigate damages by accepting available alternative employment of the same or similar character, but not employment of a significantly different kind"). (Footnotes omitted.)

{¶ 49} The court of appeals determined that the board had proven that Stacy had failed to mitigate his damages by not seeking alternative employment as a mechanic as advertised in two local newspapers during the period of his wrongful exclusion from employment by the board. The board asserts that the court of appeals erred in failing to consider the Laidlaw offer of employment to Stacy as an appropriate offer of similar employment that reduces Stacy's back-pay claim.

{¶ 50} The board's assertion has merit. The offer of employment by Laidlaw was similar employment—to perform mechanical work on the same buses he serviced when employed by the board—in the same work location. Although the pay may not have been quite as much as he would have earned under his continuing contract with the board, his salary would have been comparable.

{¶ 51} Stacy claims, however, that the Laidlaw offer was not the same as his board job so as to require him to accept it in order to mitigate his damages. Stacy misconstrues his duty. "Similar" is not synonymous with "same." See

*State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 31, quoting Webster's Third New World International Dictionary (1986) 2007 and 2120 (" 'Same' means 'resembling in every way' and 'identical,' and 'similar' means 'very much alike,' 'comparable,' and 'alike in substance or essentials' "). The mere fact that the Laidlaw job differed in certain particulars from the board job did not make the job dissimilar. " 'It has never been the law that the mere existence of differences between two jobs in the same field is sufficient, as a matter of law, to excuse an employee wrongfully discharged from one from accepting the other in order to mitigate damages.' " (Emphasis deleted.) *Cal. School Emp. Assn. v. Personnel Comm. of Pajaro Valley Unified School Dist. of Santa Cruz Cty.* (1973), 30 Cal.App.3d 241, 254, 106 Cal.Rptr. 283, quoting *Parker v. Twentieth Century–Fox Film Corp.* (1970), 3 Cal.3d 176, 186, 89 Cal.Rptr. 737, 474 P.2d 689 (Sullivan, J., dissenting).

{¶ 52} Stacy mistakenly relies on our statements in *Stacy I*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, at ¶ 25 that "[i]t would be nonsensical to require a public employee like Stacy to accept an offer of employment for a job that was created illegally * * * *in order to retain his right to continued public employment.* And as a Laidlaw employee, Stacy would not have had the same protections as a public employee of the board, e.g., union representation and termination of employment only for the reasons specified in R.C. 3319.081(C)." (Emphasis added.) These statements, however, were directed toward the issue of whether Stacy's retirement was voluntary, not the issue of mitigation of damages. As we emphasized in *Stacy I*, id. at ¶ 25, "Stacy's refusal of an offer of employment with Laidlaw is irrelevant to the determination of whether his retirement was voluntary. *It does, however, bear on the post-liability issue of mitigation of damages.*" (Emphasis sic and added.)

{¶ 53} Accepting Stacy's position would mean that nonunion- and at-will-employment offers could not constitute offers of "similar" employment for purposes of mitigation. This position has never been the law. Cf. *Ryan v. Superintendent of Schools of Quincy* (1978), 374 Mass. 670, 676, 373 N.E.2d 1178 ("we specifically hold that nontenured positions are 'comparable' to tenured positions for the purpose of mitigating damages. Any other conclusion would render the requirement of mitigation inapplicable to tenured employees, a result which we have declined to reach"). Nor did acceptance of the Laidlaw job "constitute a disadvantageous renegotiation of the original contract or an abandonment of rights and remedies thereunder." *Fair v. Red Lion Inn* (Colo.1997), 943 P.2d 431, 438–439. In fact, all of the bus drivers employed by the board who accepted Laidlaw's offer of employment were ultimately reinstated to employment with the board pursuant to *OAPSE*, 89 Ohio St.3d 191, 729 N.E.2d 743.

{¶ 54} Stacy further argues that his duty to mitigate damages for the 1998–1999 and 1999–2000 school years was satisfied when he offset his request for back pay by the SERS retirement benefits he received for those school years. Stacy, however, cites no law that authorizes the substitution of pension benefits for the duty to mitigate, and his argument is not persuasive. Stacy himself claimed he was ready, willing, and able to work during the period of his wrongful exclusion, but he did not actively seek other employment. " 'Generally, a party who has been wronged by a breach of contract may not unreasonably sit idly by and allow damages to accumulate, but instead must attempt to minimize his damages.' " See *Farmer v. Meigs Ctr. Ltd.* (Mar. 30, 1998), Meigs App. No. 96 CA 12, 1998 WL 166451, *9, quoting *PDT & Co. v. Ballinger* (July 8, 1992), Hamilton App. No. C–910452, 1992 WL 161412, *5.

{¶ 55} Stacy finally claims that the board is precluded from asserting the defense of mitigation of damages to reduce the back-pay award because it failed to mitigate its own damages by refusing to reinstate him following the court's decision in *OAPSE* and after he filed this mandamus action. But *OAPSE* did not collaterally estop the board from claiming that Stacy's retirement waived his entitlement to back pay. *Stacy I,* 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, at ¶ 18. Before our decision in *Stacy I,* the board could have reasonably concluded that unlike the relators reinstated in *OAPSE,* Stacy was not entitled to reinstatement, because he had retired.

{¶ 56} Stacy relies on *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 277, 719 N.E.2d 955 ("When both parties have the same opportunity to reduce damages, a defendant cannot later contend that the plaintiff failed to mitigate") and *S.J. Groves & Sons Co. v. Warner Co.* (C.A.3, 1978), 576 F.2d 524, 530 ("The duty to mitigate damages is not applicable where the party whose duty it is primarily to perform a contract has equal opportunity for performance and equal knowledge of the consequences of nonperformance"). These cases, however, are inapplicable because they involved circumstances in which the breaching party could have minimized damages by performing the *same act* as the other party. See *Chicago Title,* 87 Ohio St.3d at 277, 719 N.E.2d 955 (insured not obligated to minimize damages by bidding on secured property in a foreclosure resulting from title insurer's failure to discover a senior lien when insurer had equal opportunity to bid on property at foreclosure); *S.J. Groves,* 576 F.2d at 530 (subcontractor not obliged to mitigate damages by contracting for additional supply of concrete when supplier would not perform and supplier was in as good a position as subcontractor to obtain a supplemental supply).

{¶ 57} Stacy's theory is also incorrect because "[i]t would relieve every plaintiff of the duty to mitigate because the defendant could have mitigated by not breaching the contract in the first place." *Rossi v. Mobil Oil Corp.*

(C.A.Temp.Emer.1983), 710 F.2d 821, 834. The federal court of appeals further observed that *S.J. Groves* was inapposite because in that case, "both parties could have reduced damages by performing *the same act*." (Emphasis sic.) See, also, *Natl. Communications Assn., Inc. v. Am. Tel. & Tel. Co.* (S.D.N.Y.2001), No. 93 CIV. 3707, 2001 WL 99856, *7 ("In essence, NCA is arguing that AT & T could have mitigated the damages caused by its breach by not breaching. This is an inaccurate and illogical application of the principle cited by NCA").

{¶ 58} As the court of appeals cogently concluded, Stacy's argument is specious:

{¶ 59} "Simply because the position that Stacy voluntarily retired was not ultimately upheld by the Ohio Supreme Court does not mean that the position was unreasonable or that it should now be construed as a foregone opportunity to mitigate damages. To adopt this view is tantamount to concluding that all that employees who believe they have been improperly discharged need to do to mitigate damages is ask for their jobs back. This would absolve such employees from making any further effort to obtain similar employment to mitigate damages."

{¶ 60} Based on the foregoing, the board was not precluded from raising the mitigation defense. The court of appeals erred in failing to determine that the board had established that Stacy did not exercise due diligence to mitigate his damages when he rejected the offer of substantially similar employment as a bus mechanic with Laidlaw. Stacy's back-pay award should consequently be reduced by the amount of money he would have made with Laidlaw. After subtracting the offsets for SERS payments received by Stacy during the period of his wrongful exclusion, the amount he would have made from Laidlaw during that same period, and the amount he earned while working for the board during that portion of the 1998–1999 school year before his layoff, Stacy is entitled to no back-pay award, i.e., this sum exceeds the amount he would have received under his continuing contract with the board.

### Prejudgment Interest

{¶ 61} Stacy claims that the court of appeals erred in failing to award prejudgment interest on the back-pay award. Stacy's contention lacks merit because after making the appropriate deductions, he is not entitled to any back pay.

{¶ 62} Moreover, "[a] public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment." *Beifuss v. Westerville Bd. of Edn.* (1988), 37 Ohio St.3d 187, 525 N.E.2d 20, syllabus. In *Beifuss,* we construed R.C. 1343.03(A), relied on by

Stacy here, and determined that this statutory provision did not "clearly express any intention of the legislature to assess prejudgment interest against a public school board" in a case involving a back-pay award. Id., 37 Ohio St.3d at 190, 525 N.E.2d 20, fn. 1. See, also, *Judy v. Ohio Bur. of Motor Vehicles,* 100 Ohio St.3d 122, 2003-Ohio-5277, 797 N.E.2d 45, ¶ 30. Therefore, the court of appeals did not err in denying Stacy's request for prejudgment interest on his back-pay award.

### Lost Benefits: Sick–Leave Credits

{¶ 63} The court of appeals determined that Stacy did not establish his entitlement to the sick-leave credits he would have earned during the period of his wrongful exclusion from employment with the board. Stacy challenges that determination and claims entitlement to the full 82.5 hours of sick-leave credit he would have earned if had not been laid off and had not used any sick leave during that period.

{¶ 64} In rejecting a similar claim ("whether, in a mandamus action brought by a reinstated municipal employee to recover back pay, the reinstated employee is entitled to be credited with vacation days, holidays and sick leave hours he would have earned") we noted, quoting from the court of appeals decision in that same case, that " 'to accept * * * (the claim) we would have to conclude that Crockett was so diligent and so healthy an employee that he would never have taken a vacation day, that he would have worked on every holiday and that he would not have taken one hour of sick leave during the entire four-and-one-half year period. The record does not support such a conclusion * * *.' " *Crockett,* 67 Ohio St.2d at 368, 21 O.O.3d 228, 423 N.E.2d 1099.

{¶ 65} Similarly, after over 13 years of employment with the board, Stacy had a balance of only 29.75 days of sick leave when he retired in August 1998, and he had regularly used an average of 11 days of sick leave per year in the past. Given that evidence, the court of appeals did not err in concluding that Stacy's claim for 82.5 hours of sick-leave credit, which assumed that Stacy would never have taken sick leave during the period of his layoff, had not been established with the requisite certainty. *Guerrero,* 68 Ohio St.2d at 7, 22 O.O.3d 98, 427 N.E.2d 515 ("since [vacation and sick leave] days cannot be established with certainty, they cannot be credited to relators").

### Lost Benefits: Attendance–Incentive Pay

{¶ 66} The court of appeals also correctly denied Stacy's claim for lost attendance-incentive pay. The amount that Stacy requested—$1,200 for four years—assumes that he would not have missed *any* days due to sick or personal leave during the entire over four-year period of his layoff. But as discussed, this claim is inconsistent with his use of sick leave in the past. Moreover, Stacy testified that he "always take[s]" personal leave. Therefore, based on *Crockett,*

67 Ohio St.2d at 368, 21 O.O.3d 228, 423 N.E.2d 1099, Stacy failed to prove his entitlement to the requested $1,200 in attendance-incentive pay with certainty.

Compensatory and Punitive Damages

{¶ 67} Stacy asserts that the court of appeals erred in granting the board's motion for summary judgment on his claim for compensatory and punitive damages because these damages are permissible in mandamus under R.C. 2731.11.

{¶ 68} R.C. 2731.11 provides:

{¶ 69} "If judgment in a proceeding for a writ of mandamus is rendered for the plaintiff, *the relator may recover the damages which he has sustained,* to be ascertained by the court or a jury, or by a referee or master, as in a civil action, and costs." (Emphasis added.)

{¶ 70} Stacy claims that under R.C. 2731.11, he is entitled to compensatory and punitive damages and attorney fees, which "flow from [the board's] unlawful actions subsequent to issuance of the writ and after remand by this Court."

{¶ 71} Stacy's claim is meritless because R.C. 2731.11 provides for the recovery in a mandamus action only of damages *sustained* before the writ is granted. Under R.C. 2731.11, "[a] writ of mandamus must be granted before a claim for damages may be considered." *State ex rel. Natl. City Bank v. Maloney,* 103 Ohio St.3d 93, 2004-Ohio-4437, 814 N.E.2d 58, ¶ 13. Once the writ is granted, relator may recover the damages *sustained,* which manifestly refers to damages incurred by the relator *before* the writ was granted, not thereafter. Adopting Stacy's construction of R.C. 2731.11 would require adding the words "and will sustain until the writ is complied with" to the phrase "the relator may recover the damages which he has sustained." We cannot, however, add language to the statute. See *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 25; *State v. Hughes* (1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 ("In construing a statute, we may not add or delete words").

{¶ 72} Moreover, Stacy's claim for postreinstatement damages was, according to his motion for leave to file an amended/supplemental complaint, a tort claim for wrongful discharge in violation of public policy under *Greeley v. Miami Valley Maintenance Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51. Stacy has an adequate remedy in the ordinary course of law by bringing a civil action in tort to raise these claims. "Mandamus will not issue if there is a plain and adequate remedy in the ordinary course of law." *State ex rel. Ullmann v. Hayes,* 103 Ohio St.3d 405, 2004-Ohio-5469, 816 N.E.2d 245, ¶ 8.

{¶ 73} Finally, in *State ex rel. Bush v. Spurlock* (1992), 63 Ohio St.3d 453, 459–460, 588 N.E.2d 840, we rejected a comparable mandamus claim for damages

alleged to have occurred *after* a wrongfully discharged public employee had been reinstated to public employment:

{¶ 74} "In their cross-appeal, three appellees claim that the court of appeals erred by refusing a writ of mandamus to correct the pay decreases imposed upon their reinstatement. * * *

{¶ 75} "We, however, share the view that a public employee is entitled under *Monaghan* [*v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462] to no more back pay than the amount of the employee's salary accrued during the period of unlawful exclusion from public employment * * * and that a writ of mandamus is therefore available to enforce the civil service laws. We see nothing in that case or any other cited by appellees to suggest that the same rule applies when employees are reinstated at wages lower than they previously enjoyed. Thus, employees suffering such a loss must affirmatively show the absence of an adequate remedy in the ordinary course of law for a writ of mandamus to issue. R.C. 2731.05.

{¶ 76} "Appellees have not satisfied this prerequisite."

{¶ 77} Therefore, the court of appeals properly denied Stacy's claim for compensatory and punitive damages.

### Attorney Fees

{¶ 78} Stacy contends that the court of appeals erred in denying his claim for attorney fees because the board acted in bad faith when it failed to reinstate him as a bus mechanic and pay him back pay. Attorney fees are not recoverable as damages in a mandamus action under R.C. 2731.11. *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 449, 452, 755 N.E.2d 883.

{¶ 79} Stacy's claim for attorney fees based on the board's refusal to pay him back pay is baseless because after making the appropriate deductions, Stacy is not entitled to any back-pay award. And Stacy's claim for attorney fees concerning the alleged circumstances surrounding his reinstatement again concerns postwrit actions that are more properly addressed in a tort action.

{¶ 80} Based on the foregoing, the court of appeals did not err in denying Stacy's request for attorney fees.

### Conclusion

{¶ 81} We reverse the court of appeals judgment insofar as it grants back pay to Stacy. The court of appeals erred in failing to reduce the back pay that Stacy would have been entitled to by the amount he received in SERS retirement benefits and the amount he would have earned if he had exercised due diligence

by accepting the Laidlaw job offer. In all other respects, the judgment of the court of appeals is affirmed.

> Judgment affirmed in part
> and reversed in part.

MOYER, C.J., O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

---

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

{¶ 82} I disagree with the majority's decision insofar as it reduces the back-pay award to appellant and cross-appellee, Dorsie Stacy, by the amounts he received in benefits from the School Employees Retirement System ("SERS") and would have received in wages had he accepted employment with Laidlaw Transit, Inc. In my opinion, these offsets are inappropriate under the present circumstances.

{¶ 83} In finding that Stacy's back-pay award should not be reduced by the amount of benefits he received from the SERS, the court of appeals explained, "Stacy received these benefits due to his years of service and payments into the SERS retirement system. It would be a windfall to the board if it were permitted to reduce the amount of back pay owed to Stacy by the amount he received from SERS as a result of his retirement."

{¶ 84} In reversing the court of appeals' judgment on this issue, the majority relies on breach-of-contract cases in which retirement benefits and unemployment-compensation payments were held to be properly offset against back-pay awards. The majority reasons that the party whose employment contract was breached is not entitled to be placed in a better position than he or she would have been in had there been no breach. Furthermore, the majority reasons, the principle of deterrence behind the collateral-source rule, which precludes an offset for amounts received from a source independent of the wrongdoer, is inapplicable in breach-of-contract actions.

{¶ 85} By offsetting Stacy's retirement benefits, however, the majority places Stacy in a worse position than he would have been in but for the board's illegal layoff and concomitant privatization of his job. In *United Protective Workers of Am., Local No. 2 v. Ford Motor Co.* (C.A.7, 1955), 223 F.2d 49, 53, upon which the majority places significant weight, the court explained, "The District Court's judgment awarded [plaintiff] all the wages he would have received if the contract had not been breached, and if the social security and annuity payments are not deducted, [plaintiff] will have received more than he would have if the contract had not been breached."

{¶ 86} In this case, the court of appeals did not award Stacy all of the wages he would have received had the board not forced his retirement. From the $134,221.18 that Stacy would have received from continued employment with the board, the court of appeals deducted $108,333 in "mitigation income" that Stacy might have earned from obtaining equivalent employment as a general or bus mechanic, thus awarding him a total of $25,888.18 in back pay. Indeed, after subtracting his SERS benefits also, the majority declares, "Stacy is entitled to no back-pay award."

{¶ 87} Moreover, this case does not involve a simple breach of an employment contract. In this case, "the board illegally abolished [Stacy's] position and laid him off and contracted out the same work to Laidlaw." *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 23. In this regard, "the board's actions were invalid because they violated R.C. 3319.081," which provides nonteaching school-district employees with certain rights and protections regarding the termination of their employment. Id. at ¶ 20. See, also, *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 558, 561, 757 N.E.2d 339; *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4, AFL–CIO v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 195, 729 N.E.2d 743.

{¶ 88} Under these circumstances, "[r]educing recovery by the amount of the benefits received by plaintiff would be granting a windfall to defendant by allowing [it] an undeserved credit on [its] own wrongdoing from a source never so intended." *Sporn v. Celebrity, Inc.* (1974), 129 N.J.Super. 449, 459, 324 A.2d 71 (refusing offset of unemployment compensation received by plaintiff in wrongful-discharge action.)

{¶ 89} The majority also offsets the amount of wages that Stacy would have earned if he had gone to work for Laidlaw, reasoning that the Laidlaw offer of employment was sufficiently similar to Stacy's work as a bus mechanic for the board so as to require its acceptance in mitigation of damages. Yet in that very equivalence lies its illegality. The board's actions in this case were invalid under R.C. 3319.081 precisely because the board had laid off public employees by abolishing their positions while in reality retaining the same positions and hiring nonpublic employees to fill them. It is a strange holding, indeed, that requires a wrongfully terminated public employee to mitigate his damages by accepting the very conditions that made his termination illegal.

{¶ 90} I would affirm the judgment of the court of appeals in its entirety.

PFEIFER, J., concurs in the foregoing opinion.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 91} I dissent from the majority's conclusion that defendant is entitled to no back pay.

{¶ 92} In *Stacy I*, we held that Stacy's retirement was involuntary and that he was entitled to reinstatement and back pay. However, in *Stacy II*, the appeal at issue, we award him nothing, holding, in an ironic twist, that he should have taken the very Laidlaw job that we held he had no obligation to take in *Stacy I* and that Laidlaw's higher salary now becomes the measure for his duty to mitigate.

{¶ 93} Then, to add insult to injury, we also add to the Laidlaw salary his School Employees Retirement System ("SERS") benefits, thereby attributing to Stacy more compensation than his contract had allowed. Therefore, Stacy may recover no back pay.

{¶ 94} While an employee may retire, collect SERS benefits, and become re-employed, he is not required to pursue both retirement benefits and full-time employment to mitigate his damages. We should either credit Stacy for SERS benefits as his efforts at mitigation *or* hold that he had a duty to mitigate and find another job—not both. Mitigation law does not require a plaintiff to take retirement benefits and a comparable job to recover—nor should the measure of damages encompass both retirement benefits and full-time employment.

{¶ 95} In this case, the court of appeals concluded that jobs similar to Stacy's were available and paying $25,000 per year. That figure should be the measure of the mitigation damages, not the amount Laidlaw was offering, since we have already held that Stacy was not obligated to take the Laidlaw job. Any other requirement puts the defendant in an untenable position—take the very job that we have held to be illegal or receive no back pay for failure to mitigate.

{¶ 96} Granting mitigation credit for both the Laidlaw job amount and SERS benefits does give the school board a windfall—it ends up liable for *nothing*. Instead, we should hold either that the plaintiff did mitigate by accepting SERS benefits *or* that $25,000 per year for comparable mechanical jobs is the measure for mitigation, and award defendant the difference between the amount guaranteed in the continuing contract and either measure of mitigation. To do otherwise would allow the school board to lose the battle but win the war.

{¶ 97} Therefore, I respectfully dissent from the failure to award back pay to Stacy.

RESNICK, J., concurs in the foregoing opinion.

---

Buckley King, James E. Melle, and Donell Grubbs, for appellant and cross-appellee.

Ennis, Roberts & Fischer Co., L.P.A., and C. Bronston McCord III, for cross-appellants and appellees.