THE STATE EX REL. LAKEVIEW LOCAL SCHOOL DISTRICT BOARD OF EDUCATION *v.* TRUMBULL COUNTY BOARD OF COMMISSIONERS.

[Cite as *State ex rel. Lakeview Local School Dist. Bd. of Edn. v. Trumbull Cty. Bd. of Commrs.,* 109 Ohio St.3d 200, 2006-Ohio-2183.]

(No. 2005–1384—Submitted March 29, 2006—Decided May 17, 2006.)

———————

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel the distribution to a school board of certain federal mineral royalties received by a county from the state.

{¶ 2} The Mosquito Creek Flood Control Project ("Mosquito Creek") is a 16,000–acre reservoir in Trumbull County, Ohio, which is maintained and administered by the United States Army Corps of Engineers under the authority of the Flood Control Act, Section 701 et seq., Title 33, U.S.Code. The federal government acquired land within Mosquito Creek for flood-control purposes under Section 701c–1, Title 33, U.S.Code in the late 1930s, when the land was removed from Trumbull County's tax rolls. This property is located in the taxing district of relator, Lakeview Local School District Board of Education, although the school district did not exist at the time the federal government acquired the property.

{¶ 3} In the early 1990s and in 2000, the federal government granted several mineral leases to private exploration and development companies to extract natural gas from federal lands located in Lakeview's taxing districts within Mosquito Creek. The leaseholders made mineral royalty payments to the federal government, and the Minerals Management Service of the United States Department of the Interior administered these payments.

{¶ 4} Pursuant to Section 701c–3, Title 33, U.S.Code, the Treasurer of the United States distributed to the state of Ohio its share of the money generated by the leased lands. The General Assembly appropriated these funds to the Ohio Department of Natural Resources ("ODNR") in the state's biennial budget for distribution by ODNR to respondent, Trumbull County Board of Commissioners. This appropriation is described in the 2003 Catalog of Budget Line Items published by the Ohio Legislative Service Commission as Fund 3B4, "Federal Flood Pass–Thru," and is also included in the state's fiscal year 2006–2007 biennial budget in Section 209.18 of 2005 Am.Sub.H.B. No. 66.

{¶ 5} The board of commissioners received warrants for the disbursement of the funds from ODNR through the state auditor in varying amounts from June 1994 through March 2005. ODNR did not direct the board to make specific disbursements of this money; instead, ODNR noted that "the State of Ohio does not receive any direction from the Federal Government regarding the use of these moneys" beyond Section 701c–3. The board of commissioners deposited all of the funds received from ODNR into its general fund and did not disburse any of the money derived from mineral royalties to the school board.

{¶ 6} On July 28, 2005, the school board filed this action for a writ of mandamus to compel the board of commissioners to distribute to the school board its portion of the Section 701c–3 federal mineral-lease payments for the leased federal lands within the school board's taxing districts under R.C. 5705.11. After

the board of commissioners answered the school board's complaint, we granted an alternative writ. The parties submitted evidence and briefs on the merits of the school board's claim.

{¶ 7} This cause is now before the court for a decision on the merits.

## Mandamus: Standard of Review

{¶ 8} The school board asserts that it is entitled to the distribution of mineral-lease payments. In order to be entitled to the requested writ of mandamus, the school board has to establish a clear legal right to compel the board of commissioners to distribute the mineral-lease payments to the school board, a corresponding clear legal duty on the part of the board of commissioners to do so, and the lack of an adequate remedy in the ordinary course of the law. See *State ex rel. Duncan v. Mentor City Council,* 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 10.

{¶ 9} The school board lacks an adequate legal remedy because it has no right to appeal the board of commissioners' alleged failure to follow its statutory duty. See, e.g., *State ex rel. Ms. Parsons Constr., Inc. v. Moyer* (1995), 72 Ohio St.3d 404, 406–407, 650 N.E.2d 472 (mandamus is an appropriate remedy when the relator is being damaged by a failure of police officers to perform official acts that they are under a duty to perform); *State ex rel. Asti v. Ohio Dept. of Youth Servs.,* 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658 (mandamus is an appropriate remedy when relator has no right to appeal alleged denial of statutory rights).

{¶ 10} Therefore, the dispositive issue is whether the school board has established a clear legal right to the mineral-lease payments and a concomitant legal duty on the part of the board of commissioners to distribute these payments to the school board.

## Mandamus: R.C. 5705.11

{¶ 11} The school board claims that it is entitled to the mineral-lease payments because of R.C. 5705.11.

{¶ 12} Section 701c-3, Title 33, U.S.Code requires the federal government to disburse 75 percent of all money, including mineral royalties, generated by the leased real property acquired for flood-control purposes:

{¶ 13} "75 per centum of all moneys received and deposited in the Treasury of the United States during any fiscal year on account of the leasing of lands acquired by the United States for flood control, navigation, and allied purposes, including the development of hydroelectric power, shall be paid by the end of such year by the Secretary of the Treasury to the State in which such property is situated, to be expended as the State legislature may prescribe for the benefit of

public schools and public roads of the county, or counties, in which such property is situated, or for defraying any of the expenses of county government in such county or counties, including public obligations of levee and drainage districts for flood control and drainage improvements * * *. For the purposes of this section, the term 'money' includes, but is not limited to, such bonuses, royalties and rentals * * * paid to the United States from a mineral lease issued under the authority of the Mineral Leasing Act for Acquired Lands [30 U.S.C.A. § 351 et seq.] or paid to the United States from a mineral lease in existence at the time of the acquisition of the land by the United States."

{¶ 14} Much like comparable legislation, Section 701c–3 does not require that the state legislature expend money received from the federal government thereunder solely for public schools:

{¶ 15} "The act does not direct any division of the money between schools and roads. Its language * * * indicates an intention on the part of Congress that the state in its discretion may prescribe by legislation how the money is to be expended. No distribution to * * * any * * * school districts is required." *King Cty. v. Seattle School Dist. No. 1* (1923), 263 U.S. 361, 364, 44 S.Ct. 127, 68 L.Ed. 339, analyzing an analogous statute, Section 500, Title 16, U.S.Code, providing for the disbursement of 25 percent of national forest money to states for the benefit of public roads and public schools.

{¶ 16} Ohio exercised its discretion regarding distribution of money received by the federal government by specifying that "payments to the county in lieu of the general real property taxes" be disbursed to taxing districts adversely affected by the removal of real property from the tax duplicate by the federal government for flood-control purposes:

{¶ 17} "Whenever lands are removed from the tax duplicate of a county under * * * the 'Flood Control Act of 1954,' 68 Stat. 1266, [33] U.S.C.A. 701c–3, and the federal government makes payments to the county in lieu of the general real property taxes, in the form of rents or otherwise, such revenues shall be distributed by the board of county commissioners to the taxing districts for the purposes provided under such acts to the taxing districts adversely affected by the removal of said lands from the tax duplicate, in proportion to the amount of loss suffered by each taxing unit." R.C. 5705.11.

{¶ 18} The school board contends that the mineral-lease payments under the Flood Control Act constitute "payments [made by the federal government] to the county in lieu of the general real property taxes, in the form of rents or otherwise." In construing this statutory language, our paramount concern is legislative intent. *State ex rel. Musial v. N. Olmsted,* 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. In order to determine the statute's intent, we " 'read words and phrases in context according to the rules of grammar and

common usage.' " *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 27, quoting *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; R.C. 1.42.

{¶ 19} According to R.C. 5705.11, a board of county commissioners has a duty to distribute payments to a taxing district like a school district if (1) the federal government removes lands from the county's tax duplicate for flood-control purposes, (2) the removal adversely affects the taxing district, (3) the federal government makes payments to the county in the form of rents or otherwise, and (4) the payments are made in lieu of general real property taxes.

{¶ 20} The school board has established that the federal government removed the real property from the county's tax duplicate for flood-control purposes and that the federal government's removal of land from the tax duplicate adversely affects the school district because it receives less real property taxes.

{¶ 21} Nevertheless, the school board has not established the remaining requirements for entitlement to the mineral-lease payments. The federal government is not making payments directly "to the county." Instead, under Section 701c–3, Title 33, U.S.Code, the federal government makes payments to *the state* "to be expended as the State legislature may prescribe" for the benefit of the counties.

{¶ 22} Moreover, mineral royalties do not necessarily constitute payments "in lieu of the general real property taxes." "Most state courts which have considered [the comparably worded] Section 500 [1] [Title 16, U.S.Code provision for the federal government's payment of a percentage of money received from each national forest to the state for the benefit of counties] have held that payments under it are not in lieu of state taxes." *Internatl. Paper Co. v. Siskiyou Cty.* (C.A.9, 1974), 515 F.2d 285, 289, fn. 4; see, generally, cases cited therein. Section 500 "evidences no intention on the part of Congress to make payments in lieu of taxes, but rather a friendly purpose to create trusts for the benefit of counties in which national forests are located in recognition of the national interest in education and road building. Differently put, we feel the Federal enactment evidences a congressional intent to discharge, in a manner and to an extent seeming to fit it, a Federal, moral, and civil obligation to promote education and the construction and maintenance of public roads." *Trinity Indep. School Dist. v. Walker Cty.* (Tex.Civ.App.1956), 287 S.W.2d 717, 722; see, also, *Tree Farmers, Inc. v. Goeckner* (1963), 86 Idaho 290, 294, 385 P.2d 649 (payments under Section

---

1. Section 500, Title 16, U.S.Code provides that "twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State or Territory in which such national forest is situated, to be expended as the State or Territorial legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated."

500 are "in the nature of an assistance grant, not in lieu of taxes"); *Bartlett v. Collector of Revenue* (La.App.1973), 285 So.2d 346, 348 ("payments made by the Federal Government under the provisions of [Section 500] are not in lieu of taxes"); *United States v. Fresno Cty.* (1975), 50 Cal.App.3d 633, 641, 123 Cal.Rptr. 548 ("Payments made by the United States government under section 500 of title 16 are not in lieu of taxes").

{¶ 23} The school board counters that a 1976 amendment to Section 500 clarified congressional intent that—contrary to the views of most state courts—federal forest payments made under that section were to be considered to be in lieu of taxes. See Pub.L. 94–588, Section 16, 90 Stat. 2949, 2961, amending Section 500, Title 16, U.S.Code, by adding "The Secretary of Agriculture shall, from time to time as he goes through his process of developing the budget revenue estimates, make available to the States his current projections of revenues and payments estimated to be made under the Act of May 23, 1908, as amended, or *any other special Acts making payments in lieu of taxes,* for their use for local budget planning purposes." (Emphasis added.)

{¶ 24} But this assertion is unclear. The cited language does not manifestly specify that Section 500 payments are in lieu of taxes. In fact, in an article concerning the 1976 amendment, the authors reiterate the majority interpretation: "Most of the state courts have defined payments made to states under section 500 as assistance grants, and not as payments-in-lieu of taxes which might have been collected by the state had the land not been located in a national forest." The National Forest Management Act: Law of the Forest in the Year 2000 (2001), 21 J. Land Resources & Envtl.L. 151, 163.

{¶ 25} Section 701c–3 federal flood-control payments are "indistinguishable in character" from the federal forest funds under Section 500. *Trinity,* 287 S.W.2d at 724. Like the forest funds, flood-control funds are "to be expended as the State legislature may prescribe for the benefit of public schools and public roads of the county, or counties, in which such property is situated." Section 701c–3, Title 33, U.S.Code.

{¶ 26} Consequently, mineral-lease revenues transferred by the federal government to the state under Section 701c–3 are not "payments to the county in lieu of the general real property taxes." Our conclusion is consistent with the general precept that the purpose of payments in lieu of taxes is to "assist local governments by partially compensating for lost revenue occasioned by the existence of federal lands in the locality, which results in a reduction of lands available for local property tax," and that these "reimbursements are not available where other 'payment laws' compensate the local governments." *United States ex rel. Erickson v. Uintah Special Servs. Dist.* (D.Utah 2005), 395 F.Supp.2d 1088, 1097–1098 (holding that local governments must reduce any

payments in lieu of taxes they would otherwise receive by mineral-lease funds received under the federal Mineral Leasing Act).

{¶ 27} Finally, the Legislative Service Commission's description of Fund 3B4, "Federal Flood Pass–Thru," in the 2003 Catalog of Budget Items differentiates between payments in lieu of taxes from the United States Army Corps of Engineers and mineral-lease payments from the Minerals Management Service of the Department of the Interior:

{¶ 28} "This fund receives a payment in lieu of taxes from the U.S. Army Corps of Engineers for federal land used in flood control projects. The fund also receives payments from Minerals Management Service of the Department of the Interior for minerals produced on flood control land. All monies in the fund are passed through to the counties in which the flood control projects are located."

{¶ 29} Based on the foregoing, the school board has not established under R.C. 5705.11 either an entitlement to a distribution of the mineral-lease payments to it or a legal duty on the part of the board of county commissioners to so provide. Accordingly, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent and would grant the writ.

———————

John R. Varanese, for relator.

Blaugrund, Herbert & Martin, Inc., David S. Blaugrund, David S. Kessler, and Geoffrey P. Scott, for respondent.