THE STATE EX REL. COUCH *v.* TRIMBLE LOCAL SCHOOL
DISTRICT BOARD OF EDUCATION ET AL.

[Cite as *State ex rel. Couch v. Trimble Local School Dist.
Bd. of Edn.,* 120 Ohio St.3d 75, 2008-Ohio-4910.]

(No. 2007–2438—Submitted August 26, 2008—Decided October 2, 2008.)

## Per Curiam.

{¶ 1} This is an original action for a writ of mandamus to compel a board of education, its members, and the school district superintendent to reinstate a former employee to the nonteaching position of Safe and Drug Free Schools Coordinator and to pay the employee all back pay and benefits owed from the date of layoff to the date of judgment, plus interest. Because neither the board nor the school district planning and supervision commission was authorized to abolish the employee's position and lay her off after the employee had obtained continuing-contract status, we grant the writ.

### Employment as the Safe and Drug Free Schools Coordinator

{¶ 2} Relator, Deborah Couch, is a licensed substitute teacher who has never held a teacher's certificate in Ohio and has never been authorized to teach on a full-time basis. Respondent Trimble Local School District Board of Education employed Couch as the district's Safe and Drug Free Schools Coordinator on a part-time basis from October 1993 until February 2000, when she was hired as the school district's full-time Safe and Drug Free Schools Coordinator. This position was a nonteaching position. When the board hired Couch as a full-time coordinator in February 2000, it did so by resolution without any written contract, and the position was completely funded by grant proceeds.

{¶ 3} The board approved a two-year contract for Couch in April 2001 to remain as the Safe and Drug Free Schools Coordinator. Neither the board's minutes nor the contract specified that the position was contingent on the continued receipt of grant proceeds. Two years later, the board approved a five-year contract for Couch. The contract was mistakenly titled a "teachers contract"; because Couch did not have a teacher's license, she could not be employed as a teacher. Although the contract did not specify that it was contingent on funding, the board's vote approving the contract was conditioned on the "pending availability of continued funding."

### Financial Planning and Supervision Commission

{¶ 4} In January 2001, the state auditor declared the school district to be in a state of fiscal emergency, pursuant to R.C. 3316.03(B)(2). As a result of the emergency declaration, a financial planning and supervision commission was created for the school district to direct its return to financial stability. See R.C. 3316.05(A). The commission approved a financial recovery plan for the school district and later approved an addendum to the plan. Neither the plan nor its addendum specified the abolition of Couch's position.

{¶ 5} In March 2005, the board adopted a five-year fiscal forecast through June 30, 2009, that indicated the abolishment of several positions, including the coordinator position held by Couch. On April 13, 2005, the board abolished the coordinator position "beginning with the 2005–2006 school year due to declining enrollment." Grant funding for the position was not available for that school year, and the school district had lost a significant amount of revenue as a result of enrollment decreases.

{¶ 6} The state auditor then certified that the school district no longer met the fiscal-emergency conditions and that the financial planning and supervision commission for the school district was terminated as of June 9, 2005, pursuant to R.C. 3316.16. The state auditor relied on the district's forecast to determine that a fiscal emergency no longer existed.

{¶ 7} Even though its role in the operation of the school district had been terminated, the commission met on June 16, 2005, and purported to adopt the board's reductions in force, which included abolishing the coordinator position, for incorporation into the recovery plan and forecast. The board then suspended Couch's contract as coordinator effective August 22, 2005.

### Grievance and Arbitration

{¶ 8} Although Couch was not a licensed or certificated full-time teacher, she paid membership dues to the Trimble Local Teachers Association that were deducted from her paychecks from March 2000 to August 2004. The association filed a grievance concerning the school district's decision to abolish Couch's

position as well as the positions of three other employees. The arbitrator determined that the association lacked standing to pursue the grievance on Couch's behalf because the coordinator position was not within the bargaining unit specified in the collective bargaining agreement.

## Mandamus Case

{¶ 9} In August 2007, Couch demanded that the school district reinstate her to the position of Safe and Drug Free Schools Coordinator and pay her applicable back wages and benefits. The school district refused to do so.

{¶ 10} Several months later, Couch filed this action for a writ of mandamus to compel respondents, the school board, its members, and the school district superintendent, to reinstate her to the position of Safe and Drug Free Schools Coordinator and to pay all back pay and benefits owed to her from her layoff until the date of judgment, plus interest. Respondents filed an answer. After an unsuccessful mediation, we granted an alternative writ. 117 Ohio St.3d 1474, 2008-Ohio-1841, 884 N.E.2d 1107. The parties have now filed evidence and briefs.

{¶ 11} This cause is now before the court for our consideration of the merits.

## Mandamus: Standard of Review

{¶ 12} To be entitled to the requested writ of mandamus, Couch must establish a clear legal right to be reinstated to the position of Safe and Drug Free Schools Coordinator and to be awarded back pay and benefits, a clear legal duty on the part of respondents to reinstate her with back pay and benefits, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 17; *State ex rel. Nichols v. Cuyahoga Cty. Bd. of Mental Retardation & Dev. Disabilities* (1995), 72 Ohio St.3d 205, 207, 648 N.E.2d 823.

## School Board's Lack of Authority

{¶ 13} We initially consider whether Couch has established that she is entitled to be reinstated to the coordinator position.

{¶ 14} "It is axiomatic that '[a] wrongfully excluded public employee may obtain back pay and related benefits in a mandamus action following reinstatement or, in some cases, may obtain reinstatement and back pay and related benefits in the same mandamus action.' " *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 19, quoting *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 558, 563, 757 N.E.2d 339 (*"Boggs II "*).

{¶ 15} R.C. 3319.081 [1] provides that "in all school districts wherein the provisions of Chapter 124. of the Revised Code do not apply, the following employment contract system shall control for employees whose contracts of employment are not otherwise provided by law:

{¶ 16} "(A) Newly hired regular nonteaching school employees * * * shall enter into written contracts for their employment which shall be for a period of not more than one year. If such employees are rehired, their subsequent contract shall be for a period of two years.

{¶ 17} "(B) After the termination of the two-year contract provided in division (A) of this section, if the contract of a nonteaching employee is renewed, the employee shall be continued in employment, and the salary provided in the contract may be increased but not reduced unless such reduction is part of a uniform plan affecting the nonteaching employees of the entire district.

{¶ 18} "(C) The contracts as provided for in this section may be terminated by a majority vote of the board of education. * * * [T]he contracts may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance. In addition to the right of the board of education to terminate the contract of an employee, the board may suspend an employee for a definite period of time or demote the employee for the reasons set forth in this division."

{¶ 19} As we observed in *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (1998), 82 Ohio St.3d 222, 226, 694 N.E.2d 1346 (*"Boggs I"*):

{¶ 20} "Pursuant to R.C. 3319.081, local district school boards are required to enter into written employment contracts for a period of not more than one year with newly hired, regular nonteaching school employees. If those employees are then reemployed, the school board is required to enter into a written two-year contract with the employee. *After three years of full-time employment, a nonteaching school employee is deemed to be employed pursuant to a continuing contract.*" (Emphasis added.)

{¶ 21} When the board approved a five-year contract for Couch as coordinator in April 2003, she had already been employed full-time in that nonteaching position for three years. Therefore, pursuant to R.C. 3319.081, once she was reemployed, she was deemed to be employed pursuant to a continuing contract. That continuing-contract status was not contingent upon the existence of grant funding for the position.

---

1. R.C. 3319.081 was amended in 2005 to allow additional reasons for termination of a continuing contract. H.B. No. 66, effective September 29, 2005. That amendment is not before us today.

{¶ 22} Having achieved continuing-contract status upon reemployment in 2003, Couch could be laid off or suspended from her coordinator position only for the reasons set forth in R.C. 3319.081. "R.C. 3319.081 gives statutory job security to nonteaching local school district employees, in that it provides for termination of employment contracts *only* for the express enumerated reasons set forth in R.C. 3319.081(C), or for 'any other acts of misfeasance, malfeasance, or nonfeasance.' " (Emphasis sic.) *Boggs I*, 82 Ohio St.3d at 226, 694 N.E.2d 1346.

{¶ 23} The board was not authorized to abolish the coordinator position and lay off Couch. "[N]othing in R.C. 3319.081 * * * authorizes layoffs of nonteaching local school district personnel. Therefore, in the absence of a collective bargaining agreement, R.C. 3319.081 prohibits a school district's board of education from abolishing positions and laying off nonteaching personnel." *State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, Local 4, AFL–CIO v. Batavia Local School Dist. Bd. of Ed.* (2000), 89 Ohio St.3d 191, 195, 729 N.E.2d 743; *Boggs II*, 93 Ohio St.3d at 561, 757 N.E.2d 339. A collective bargaining agreement between the board and a union representing certain nonteaching employees, which was cited by respondents as authorizing the board's abolishment of the coordinator position and its layoff of Couch, is inapplicable because it does not specifically negate Couch's statutory rights under R.C. 3319.081. See *Ohio Assn. of Pub. School Emps.*, at syllabus and 197–198, 729 N.E.2d 743.

{¶ 24} Therefore, because Couch attained continuing-contract status in 2003, the school board lacked authority in 2005 to abolish her position and lay her off for economic reasons. *Boggs I*, 82 Ohio St.3d at 226–227, 694 N.E.2d 1346.

## Commission's Lack of Authority

{¶ 25} When the board rejected Couch's request for reinstatement, it claimed that the abolishment of the coordinator's position and layoff of Couch was authorized by R.C. 3316.07(A)(11).

{¶ 26} Upon the declaration of a fiscal emergency in any school district, a financial planning and supervision commission is established for the district. R.C. 3316.05(A). Within 120 days after the first commission meeting, the commission must adopt a financial-recovery plan that specifies actions to eliminate all fiscal-emergency conditions, balance the budget, and avoid future emergency conditions. R.C. 3316.06.

{¶ 27} During the existence of the commission, it has various powers and duties. R.C. 3316.07. One of the commission's powers is "[t]o make reductions in force to bring the school district's budget into balance, notwithstanding section 3319.081 and divisions (A) and (B) of section 3319.17 of the Revised Code, notwithstanding any provision of a policy adopted under section 3319.171 of the Revised Code, and notwithstanding any provision to the contrary in section

4117.08 or 4117.10 of the Revised Code or in any collective bargaining agreement entered into on or after November 21, 1997." R.C. 3316.07(A)(11). The commission was thus generally authorized under R.C. 3316.07(A)(11) to abolish the coordinator position and lay off Couch to balance the school district's budget.

{¶ 28} Nevertheless, the commission had already been terminated by the state auditor when it met and adopted the board's reductions in force for incorporation into the recovery plan. As the arbitrator hearing the teachers association's grievance noted, he was "hard put to recognize an action of the Financial Planning and Supervision Commission for the Trimble Local School District that occurred after the Commission's official demise." Thus, the commission's attempted reduction in force relating to Couch's position was ineffective because the commission lacked authority to make the terminations after its termination.

{¶ 29} Therefore, Couch has established that she was wrongfully terminated from her employment as the district's Safe and Drug Free Schools Coordinator and has established a clear legal right to reinstatement to that position and a clear legal duty on the part of respondents to reinstate her.

## Waiver

{¶ 30} Respondents claim for the first time in their brief that Couch was properly terminated pursuant to R.C. 3319.171 because she was an "other administrator" under R.C. 3319.02. Respondents, however, never treated Couch as an "other administrator," never cited these statutes or relied on this defense in rejecting Couch's request for reinstatement, and did not raise this contention in their answer to this mandamus action. We granted an alternative writ based on pleadings that did not specify this issue, and Couch introduced evidence without notice that respondents would raise this claim. Under these circumstances, we hold that respondents waived our consideration of this contention. Cf. *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 64 (parties in mandamus action waived court's consideration of claim when they did not raise it in pleadings, and evidence was presented by the parties without notice of the claim).

{¶ 31} Moreover, the evidence that the parties did introduce established that the school district treasurer confirmed that no district administrator had been laid off. And Couch's duties as coordinator did not establish that she was an "other administrator." R.C. 3319.02(A)(1)(b) and 4117.01(L).

## Laches

{¶ 32} We also reject respondents' contention that laches bars Couch's mandamus action. Couch timely pursued the grievance and arbitration procedure when respondents treated her as a teacher. Following the arbitrator's decision finding that she was not part of the collective bargaining unit including teachers, she

demanded reinstatement; upon refusal of her demand, she filed this mandamus action. Respondents failed to introduce evidence of prejudice to their ability to defend against Couch's mandamus claim. See *State ex rel. Roadway Express, Inc. v. Indus. Comm.* (1998), 82 Ohio St.3d 510, 514, 696 N.E.2d 1064 ("prejudice is ordinarily represented by a respondent's inability to defend due to the passage of time"); *State ex rel. Ohio Dept. of Mental Health v. Nadel,* 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49, ¶ 16.

## Lack of Adequate Remedy in the Ordinary Course of Law

{¶ 33} Couch also lacks an adequate remedy in the ordinary course of law because she had no right to appeal the school board's failure to follow its statutory duty to recognize her continuing-contract status. See *State ex rel. Lakeview Local School Dist. Bd. of Edn. v. Trumbull Cty. Bd. of Commrs.,* 109 Ohio St.3d 200, 2006-Ohio-2183, 846 N.E.2d 847, ¶ 9; see also *State ex rel. Cohn v. Shaker Hts. City School Dist. Bd. of Edn.* (1997), 78 Ohio St.3d 516, 518, 678 N.E.2d 1385 (affirming grant of writ of mandamus to compel payment of higher teachers' salaries incorporated into collective bargaining agreements because entitlement to higher salaries arose from statutes rather than collective bargaining agreements).

{¶ 34} As noted previously, notwithstanding respondents' contentions that Couch's claim is private and does not further the public interest, mandamus is an appropriate action in certain cases for a wrongfully excluded public employee to obtain reinstatement and back pay and related benefits. *Stacy,* 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 19; *Boggs II,* 93 Ohio St.3d at 563, 757 N.E.2d 339.

{¶ 35} Therefore, Couch has established her entitlement to a writ of mandamus to compel her reinstatement as Safe and Drug Free Schools Coordinator for the Trimble Local School District.

## Back Pay and Benefits

{¶ 36} "A reinstated public employee may maintain an action in mandamus to recover compensation due for the period of wrongful exclusion from employment, 'provided the amount recoverable is established with certainty.'" *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.* (1988), 39 Ohio St.3d 36, 37, 528 N.E.2d 1250, quoting *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. "The term 'with certainty' generally refers to 'whether a particular amount has been precisely determined as to its value in dollars and cents' and at times 'also refer[s] to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays.'" *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.,* 105

Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 28, quoting *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 120, 9 OBR 342, 459 N.E.2d 520.

{¶ 37} Couch has established that her salary as coordinator for the years for which she was wrongfully excluded from employment would have been at least $94,071.30, assuming no increases in her salary. From this amount, we must deduct the amount she earned as a substitute teacher through April 25, 2008 ($16,694), any additional amount she earned between April 26, 2008, and the end of the 2007–2008 school year, the amount she earned working a half day at the Plains School on April 14, 2008 ($32.50), and unemployment compensation benefits she received after she was laid off ($8,606). See *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 7, 22 O.O.3d 98, 427 N.E.2d 515.

{¶ 38} Therefore, Couch has established her entitlement to a back-pay award of $68,738.80 less any amounts she earned during the period she acted as a substitute teacher from April 26, 2008, to the end of the 2007–2008 school year. Couch has not established her entitlement to any other benefits with the requisite certainty. See *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 80–82 (public employees not entitled to an award of past sick-leave benefits when they did not establish their entitlement to these benefits with the required certainty).

## Conclusion

{¶ 39} Based on the foregoing, we grant a writ of mandamus to compel respondents to reinstate Deborah Couch to the position of Safe and Drug Free Schools Coordinator in the Trimble Local School District and to pay her back pay in the amount of $68,738.80 less any amounts she earned working as a substitute teacher for the school district from April 26, 2008, to the conclusion of the 2007–2008 school year.

Writ granted.

PFEIFER, O'CONNOR, and LANZINGER, JJ., concur.

MOYER, C.J., and CUPP, J., concur in judgment only.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

————————

**CUPP, J., concurring in the judgment only.**

{¶ 40} I concur in the judgment granting a writ of mandamus because the Trimble Local School District Board of Education did not treat Couch's position as Safe and Drug Free Schools Coordinator as an "other administrator" under R.C. 3319.02(A)(1)(b), but as a nonteaching employee under R.C. 3319.081.

Accordingly, we have no occasion to determine whether the board's job abolishment would have fit within the framework of R.C. 3319.171.

{¶ 41} I agree that the Trimble Local School District's financial planning and supervision commission had been terminated before it purported to act to specifically uphold the job abolishment, so R.C. 3316.07(A)(11) did not authorize that action under the facts of this case. I also agree that laches does not bar this action.

{¶ 42} For the above reasons, I concur in granting the writ.

MOYER, C.J., concurs in the foregoing opinion.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 43} Deborah Couch was hired into a special position created by school board resolution that was completely funded by a grant. Although she was subsequently given a two-year contract, followed by a five-year contract, the position was always contingent upon the availability of the grant funds. Couch's employment circumstances are distinguishable from the displaced bus drivers and other nonteaching employees in *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (1998), 82 Ohio St.3d 222, 694 N.E.2d 1346, and *State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, Local 4, AFL–CIO v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 729 N.E.2d 743, whose positions were abolished only to be subsequently replaced by a private company. Therefore, I respectfully dissent.

{¶ 44} The majority concluded that Couch had a continuing contract that the school board could not terminate except for reasons specified in R.C. 3319.081. The court relied on *Boggs* and *AFSCME* in support of its decision that Couch could not be laid off or suspended and that the board could not abolish the Safe and Drug Free School Coordinator position. However, both *Boggs* and *AFSCME* involved nonteaching positions that the school districts wanted to contract to a private entity, and both cases also involved a collective bargaining agreement.

{¶ 45} In *Boggs* and *AFSCME,* the school boards decided to abolish the classifications of bus driver and mechanic and to contract those jobs to a private company. The school boards then laid off the workers. However, the school districts did not eliminate the positions but merely contracted with a third party to fill them. We determined that a board of education "was not authorized to lay off [nonteaching employees] by abolishing their positions 'while, in effect, retaining the same positions and hiring nonpublic employees to fill them.'" *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 558, 561, 757 N.E.2d 339, quoting *AFSCME,* 89 Ohio St.3d 191, 195, 729 N.E.2d 743.

{¶ 46} Couch's situation is different. She was hired to fill a special position that the board created by resolution. It was completely funded by grant proceeds. Although the funding contingency was not stated in her recent contract, it was expressed in the board minutes when the five-year contract was approved. With the school district in dire financial straits and the funding gone, the board had no choice but to abolish the position and suspend Couch's contract.

{¶ 47} I do not believe that the school board should be obligated to reinstate Deborah Couch to the position of Safe and Drug Free Schools Coordinator. The school district is struggling financially, suffering from a loss of revenue due to declining enrollment, and making personnel cuts. The majority's mandate to reinstate Couch to the coordinator position will require the board to fund a position—one that is not even a regular teaching or nonteaching position—for which it had never allocated funds. This may require the board to fund the position from general revenues, which in turn would necessitate the board to make concessions in other areas that it considers more vital.

{¶ 48} The majority relies on a technical interpretation of school contract law and extends it to purely grant-funded positions. As a consequence, this opinion may have far-reaching consequences for those school districts that create special positions and fund them by a grant or other specialized funding. Extending contract law under these circumstances may affect numerous specialized grant positions other than this Safe and Drug Free School Coordinator position. This decision may obligate school districts to long-term contracts and awards of back wages in situations where there was no intention of long-term employment. I believe that the judiciary should not be creating rights or obligations that may have major financial implications upon our schools. Instead, this should be accomplished through collective bargaining or the legislative process.

{¶ 49} Because I believe Couch's circumstances differ from the contract employees in *Boggs* and *AFSCME,* I respectfully dissent and would deny the writ.

O'DONNELL, J., concurs in the foregoing opinion.

———————

Blaugrund, Herbert & Martin, Inc., Stephen P. Postalakis, and David S. Kessler, for relator.

Garry E. Hunter Law Offices, Inc., L.P.A., and Garry E. Hunter, for respondents.